UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MIHAIL SLAVKOV, et al.,<br>　　　　Plaintiffs,<br>　　v.<br>FAST WATER HEATER PARTNERS I, LP, et al.,<br>　　　　Defendants. | Case No.  14-cv-04324-JST<br><br>**ORDER GRANTING IN PART AND DENYING IN PART EX PARTE APPLICATION**<br><br>Re: ECF No. 55 |

Before the Court is Plaintiffs' Ex Parte Application to Invalidate Releases, Enjoin Defendants and their Counsel from Communicating with Putative Class Members Regarding Release of Claims, and to Alleviate Damage Related to Defendants' Improper Communications, filed on October 10, 2015.  ECF No. 54.  For the reasons stated below, the Court will grant the application in part and deny it in part.

**I.    BACKGROUND**

Plaintiffs Mihail Slavkov, Nikola Vlaovic, and Martin Arnaudov filed this putative class action against Defendants Fast Water Heater Partners I, LP dba Fast Water Heater Company; FWH Acquisition Company, LLC dba Fast Water Heater Company, Jeffrey David Jordan; and Jason Sparks Hanleybrown.  Complaint, ECF No. 1  They allege that they are former employees of Defendants who performed services in the San Francisco Bay Area including the installation of water heaters and other core plumbing products at customers' homes.  Second Amended Complaint ("SAC"), ECF No. 44 at ¶ 6-8.  In the operative Second Amended Complaint, dated August 27, 2015, they assert the following claims: (1) failure to pay overtime wages in violation of the Fair Labor Standards Act ("FLSA"); (2) failure to pay overtime wages in violation of California law; (3) failure to pay minimum wages under California law; (4) failure to make payments within the required time in violation of California law; (5) failure to provide proper

1  itemized wage statements in violation of California law; (6) failure to provide reimbursements; (7)
2  failure to comply with San Francisco Sick Leave Ordinance; (8) unlawful taking of wages under
3  Labor Code sections 219 and 221; (9) violation of the Fair Credit Reporting Act ("FCRA"); (10)
4  violation of the Investigative Consumer Reporting Agencies Act ("ICRAA"); (11) unfair
5  competition in violation of California law; and (12) violation of the Private Attorney General Act
6  ("PAGA").  See ECF No. 44 at ¶¶ 34-114.

7  On October 10, 2015, Plaintiffs filed this Ex Parte Application.  See ECF No. 54.  They
8  challenge two letters sent by the Defendants to the putative class members, offering a settlement
9  payment in exchange for the putative class members' release of all claims in the case.  ECF No.
10 55, Exh. 1 at 6.  The first letter, sent on or about August 5, 2015, was accompanied by a proposed
11 Voluntary Settlement, a check, and a copy of the First Amended Complaint, which had been filed
12 on December 18, 2015.  Declaration of Page R. Barnes, ECF No. 54, Exh. 3.  It explained the
13 nature of Plaintiffs' claims and that they were seeking to bring a class action.  Id. at 1.  It also
14 explained how to accept the settlement agreement and the consequences of doing so.  Id. at 2.  The
15 letter gave the putative class members until August 26, 2015 to accept the offer.  Id.

16 On or about September 18, 2015, Defendants sent a second letter to follow up on the first.
17 Id., Exh. 6.  This second letter began by stating that the recipient had not yet responded to the
18 settlement offer and noting that "there might be some confusion" about it.  It then stated,
19 apparently as clarification, that "The Company prefers to settle your potential claims ─ *even if you*
20 *do not believe that the Company has wronged you.*  The Company never presumed that those who
21 accepted the offer believed the Company had wronged them."  Id. (emphasis in original).  The
22 letter then extended the deadline to accept the settlement offer to October 2, 2015.  Id.

23 Plaintiffs argue that these two letters "made misleading statements and material omissions
24 in violation of the law."  ECF No. 55 at 6.  They request that the Court (1) declare that any
25 releases obtained from the communications are invalid; (2) enjoin the Defendants and their
26 counsel "from any further communications with putative class members related to settlement or
27 release of claims in this case without the consent of Plaintiffs or prior Court approval"; and
28 (3) that a corrective notice be sent to the putative class members "which informs them that the

1  releases are not valid, the statements in the previous communications are disputed and giving them

2  clear information about the contact information for Plaintiffs' counsel." Id. at 13-14.

3    The Court set an abbreviated briefing schedule for the application. ECF No. 56.

4  Defendants filed their opposition on October 20, 2015, in which they assert that both letters were

5  entirely proper and no action from the Court was required. ECF No. 62. Defendants also argue

6  that Plaintiffs have not shown good cause for relief through an Ex Parte Application rather than

7  standard motions practice. ECF No. 62 at 8.

## II.  LEGAL STANDARD

  "Because of the potential for abuse, a district court has both the duty and the broad authority to exercise control over a class action and to enter appropriate orders governing the conduct of counsel and parties." Gulf Oil Co. v. Bernard, 452 U.S. 89, 100 (1981). "Rule 23(d) gives district courts the power to regulate the notice and opt-out processes and to impose limitations when a party engages in behavior that threatens the fairness of the litigation." Wang v. Chinese Daily News, Inc., 623 F.3d 743, 756 (9th Cir. 2010), judgment vacated on other grounds, 132 S. Ct. 74 (2011). "The prophylactic power accorded to the court presiding over a putative class action under Rule 23(d) is broad; the purpose of Rule 23(d)'s conferral of authority is not only to protect class members in particular but to safeguard generally the administering of justice and the integrity of the class certification process." O'Connor v. Uber Technologies, Inc., No. C-13-3826 EMC, 2014 WL 1760314, at *3 (N.D. Cal. May 2, 2014).

  Gulf Oil mandates that "an order limiting communications between parties and potential class members should be based on a clear record and specific findings that reflect a weighing of the need for a limitation and the potential interference with the rights of the parties." 452 U.S. at 101. "[S]uch a weighing ─ identifying the potential abuses being addressed ─ should result in a carefully drawn order that limits speech as little as possible, consistent with the rights of the parties under the circumstances." Id. at 102. An order under Gulf Oil "does not require a finding of actual misconduct" ─ rather, "[t]he key is whether there is 'potential interference' with the rights of the parties in a class action." O'Connor v. Uber Technologies, Inc., No. C-13-3826 EMC, 2013 WL 6407583 at *4-5 (N.D. Cal. Dec. 6, 2013)

Rule 23(d) does not prohibit offers of settlement to putative class members, see Gulf Oil, 452 U.S. at 95, but courts may limit communications that improperly encourage potential class members to not join the suit, especially if they fail to provide adequate information about the pending class action. See O'Connor, 2014 WL 1760314 at *6-7. The best notice will "contain an adequate description of the proceedings written in objective, neutral terms, that, insofar as possible, may be understood by the average absentee class member." In re Nissan Motor Corp. Antitrust Litigation, 552 F.2d 1088, 1104 (5th Cir. 1977).

Courts in this district have limited communications, as well as invalidated agreements that resulted from those communications, when they omitted critical information or were otherwise misleading or coercive. See, e.g., O'Connor, 2013 WL 6407583 at *6 (invalidating arbitration agreements that "shrouded" a class action waiver within one of many provisions in a Licensing Agreement); County of Santa Clara v. Astra USA, Inc., No. 05-3740 WHA, 2010 WL 2724512 (N.D. Cal. July 8, 2010) (invalidating releases obtained by letter to putative class that did not attach plaintiffs' complaint, explain plaintiffs' claims or the status of the case, or include contact information for plaintiffs' counsel); Camp v. Alexander, 300 F.R.D. 617, 620, 624 (N.D. Cal. 2014) (invalidating opt-outs obtained by letter to employees of defendants stating the class action was "motivated by greed and other improper factors" and "could result in the closure" of the business, and failed to include any explanation of plaintiffs' claims, a copy of the complaint, or contact information for plaintiffs' counsel); Guifu Li v. A Perfect Day Franchise, Inc., 270 F.R.D. 509, 518 (N.D. Cal. 2010) (invalidating opt-out forms when defendant employer presented the forms in mandatory one-on-one meetings during work hours, failed to provide forms in workers' primary language, and refused to give workers copies to take home); Wright v. Adventures Rolling Cross Country, Inc., No. 12-0982 EMC, 2012 WL 2239797 at *5 (N.D. Cal. June 15, 2012) (enjoining defendants from communicating with potential class members after they e-mailed members warning that if they participate in the suit, their "past transgressions will become very public" and they will be "left with tattered reputations and substantial legal bills").

Other courts throughout the country have also restricted communications or invalidated releases when the communications suffered from similar deficiencies. See, e.g., Kleiner v. First

4

1  Nat'l Bank of Atlanta, 751 F.2d 1193, 1197 (11th Cir. 1985) (defendant bank conducted telephone
2  campaign "shrouded" in "secrecy and haste" with explicit purpose of soliciting opt-outs from bank
3  customers); Freidman v. Intervet Inc., 730 F. Supp. 2d 758, 764 (N.D. Ohio 2010) (defendant
4  obtained settlement releases without informing class members they were giving up the right to
5  participate in putative class action); In re Currency Conversion Fee Antitrust Litigation, 361 F.
6  Supp. 2d 237, 251 (S.D.N.Y. 2005) (defendant did not inform class members of pending class
7  action).

### III. DISCUSSION

Plaintiffs argue that Defendants' communications with putative class members were improper because (1) the letter attached an "outdated" copy of the First Amendment Complaint ("FAC") to the letter rather than the Second Amended Complaint; (2) the letter falsely stated that certain claims could be released without judicial approval; (3) the letter did not prominently display Plaintiffs' counsel's contact information; (4) the settlement release required the recipient broadly to not "participate" in the class action; (5) the settlement release misleadingly required the release of all "future" claims; and (6) the communications took place between Defendant and its current employees.

#### A. Coercion Through Current Employer-Employee Relationship

The Court begins with Plaintiffs' final argument that Defendants' communications were coercive because they were sent from an employer to its current employees. Courts have "recognized that in the context of an employer/worker relationship, there is a particularly acute risk of coercion and abuse when the employer solicits opt-outs from its workers." Guifu Li v. A Perfect Day Franchise, Inc., 270 F.R.D. 509, 517 (N.D. Cal. 2010).

In many cases, courts look for the presence of additional implicit or explicit coercion beyond the mere presence of an employer-employee relationship, though that relationship often informs the courts' evaluations of the coercive conduct. See, e.g., Guifu Li v. A Perfect Day Franchise, Inc., 270 F.R.D. 509, 518 (N.D. Cal. 2010); Belt v. Emcare Inc., 299 F. Supp. 2d 664, 668 (E.D. Tex. 2003). But see Abdallah v. Coca-Cola Co., 186 F.R.D. 672, 678 (N.D. Ga. 1999) (holding that even though "Coca-Cola has not given the Court any reason to suspect that it will

1  attempt to mislead its employees and coerce them into non-participation . . . simple reality
2  suggests that the danger of coercion is real and justifies the imposition of limitations on Coca–
3  Cola's communications").

4  Defendants do not appear to have engaged in the kind of overt coercive conduct seen in
5  other cases in this district. Defendants appear to have taken some care to use neutral language
6  when drafting their letter to class members. They acknowledge in their first letter that putative
7  class members "may agree with Fast Water" or "may agree with the Plaintiffs" or "may have no
8  opinion." Declaration of Page R. Barnes, ECF No. 54, Exh. 3 at 1. They include a copy of the
9  complaint that displays Plaintiffs' counsel's contact info, and even suggest that putative class
10  members contact Plaintiffs' counsel. Id. Finally, the letter ends with the disclaimer: "The choice
11  of whether to accept the enclosed check is entirely up to you. It is completely your choice. You
12  will not be rewarded and there will be no negative consequence to your relationship with Fast
13  Water based on your choice."

14  Accordingly, the Court concludes that the letters are not coercive simply by virtue of being
15  sent by Defendants to their current employees. At the same time, however, the employer-
16  employee relationship remains relevant when evaluating the rest of Defendants' conduct. Even
17  the good-faith efforts at fair and neutral communication cannot erase the fact that ultimately, an
18  employer controls the livelihood of its employees.

### D. Requirement to Not "Participate" in Class Action

Plaintiffs argue that the releases are misleading because they suggest that the putative class members who sign the settlement agreement are not allowed to interact with Plaintiffs' counsel in any way. ECF No. 55 at 11. Section 2(c) of the agreement is titled "Promise Not to File Lawsuit or Administrative Action or Participate in Class Action" and states, among other things, that "You further agree not to participate as a member in any class action or representative action that asserts any of the Claims released by this agreement." ECF No. 54, Exh. 4 at 2-3. Section 6 of the agreement is entitled "Confidentiality" and requires, among other things, that accepting class members "agree not to disclose . . . any information concerning the dispute which resulted in the Agreement unless such disclosure is (i) lawfully required by any government agency;

1   (ii) otherwise required to be disclosed by law (including legally required financial reporting)
2   and/or court order; or (iii) necessary in any legal proceeding in order to enforce any provision of
3   this Agreement." Id. at 3.
4         Plaintiffs argue that these sections are misleading because they "can be construed as not
5   allowing putative class members to participate as witnesses." ECF No. 63 at 8. Defendants
6   respond that the only effect of the release is (1) to prevent participation in any certified class and
7   (2) to keep the settlement communications confidential. ECF No. 62 at 8. They further
8   emphasize, both in their briefing and at oral argument, that they explicitly encouraged the putative
9   class members to contact Plaintiffs' counsel.
10        If the putative class consisted of individuals with legal training and experience in
11  negotiating settlements, Defendants' reading of Sections 2(c) and 6 might be the more persuasive.
12  However, the putative class in this case consists of a group of plumbing and water heater installers
13  who are unlikely to have legal expertise and who may not have been aware of their possible claims
14  against Defendants until they received these letters. Moreover, it is important to remember that
15  the critical inquiry is not whether the agreement *in fact* prohibits any interaction with Plaintiffs'
16  counsel, but rather whether it would be *perceived* as doing so, and in turn, whether that perception
17  would cause "potential interference" with the putative class's rights under Gulf Oil.
18        The Court concludes that these sections are misleading and potentially harmful. The most
19  sensible reading of a requirement that one "agree not to disclose . . . any information concerning
20  the dispute which resulted in the Agreement" is that anyone who accepts the agreement cannot
21  talk to Plaintiffs' counsel about the events surrounding the class action, whether as a witness or
22  otherwise. Neither the letter nor the rest of the release clarifies the effect of the sections or
23  counsels in favor of an alternative interpretation.
24        The potential harm of such language is obvious. An absent class member's access to
25  putative class counsel or other representation is a critical form of protection for that class
26  member's rights. In addition, the putative class's ability to prosecute its claims on behalf of its
27  members depends a great deal on the extent to which the class can gather information regarding
28  the events underlying the dispute. As for the language in the first letter encouraging the recipients

to contact Plaintiffs' counsel, the Court concludes this likely did little to alleviate the confusion. The misleading language was incorporated into a legally drafted, binding agreement sent to putative class members with their own employer's encouragement to sign it. Accordingly, the Court finds that Sections 2(c) and 6 could potentially mislead putative class members in regards to their rights to contact Plaintiffs' counsel.

### C. Release of Claims That Require Judicial Approval

Plaintiffs additionally contend the settlement agreement improperly requires the release of claims that can only be waived through settlement with judicial approval. More specifically, they contend that the putative class members' claims under FLSA, PAGA, and California Labor Code § 2802 cannot be waived through Defendants' settlement agreement alone. ECF No. 55 at 9. Plaintiffs appear to be arguing that the releases are therefore both invalid (by releasing claims that cannot be so released) and misleading (by failing to disclose that releasing these claims requires judicial approval). Id.

Defendants respond that the releases of these claims are valid because case law suggests "(1) judicial approval is not required to release unasserted individual claims to compensation where a good faith dispute exists over whether the compensation is due, and (2) judicial approval is not required for individual putative class members to waive the right to recover damages on claims brought under the FLSA, PAGA, and Section 2802." ECF No. 62 at 6. Alternatively, Defendants argue that even if approval is required, the proper remedy is to require Defendants to bring a motion for judicial approval of the settlement agreements they have collected thus far. Id. at 7.

The question of whether judicial approval is required to enforce a settlement of FLSA claims has not been fully resolved in this circuit. However, the Eleventh Circuit held, in Lynn's Food Stores, Inc. v. United States, 679 F.2d 1350, 1353 (11th Cir. 1982) that claims under the FLSA can only be settled either with the authority of the Secretary of Labor or the approval of the district court. "Recognizing that there are often great inequalities in bargaining power between employers and employees, Congress made the FLSA's provisions mandatory; thus, the provisions are not subject to negotiation or bargaining." Id. at 1352 (citation omitted). The rule in Lynn's

Food "has been widely, though not universally adopted" by other courts. Elizabeth Wilkins, Silent Workers, Disappearing Rights: Confidential Settlements and the Fair Labor Standards Act, 34 Berkeley J. Emp. & Lab. L. 109, 109 (2013). Accordingly, numerous other courts in this circuit have held that settlement of FLSA claims requires approval of either the Secretary of Labor or the courts. See, e.g., Yue Zhou v. Wang's Rest., No. C 05-0279 PVT, 2007 WL 172308, at *1 (N.D. Cal. Jan. 17, 2007) ("An employee's claims under the FLSA is non-waivable, and thus may not be settled without supervision of either the Secretary of Labor or a district court."); Trinh v. JPMorgan Chase & Co., No. 07-CV-01666W(WMC), 2009 WL 532556, at *1 (S.D. Cal. Mar. 3, 2009) (same); Valencia v. French Connection Bakery, Inc., No. C 07-1118 PVT, 2008 WL 152228, at *2 (N.D. Cal. Jan. 15, 2008) (same); Lee v. The Timberland Co., No. C 07-2367 JF, 2008 WL 2492295, at *2 (N.D. Cal. June 19, 2008) (same); Hand v. Dionex Corp., No. CV 06-1318-PHX-JAT, 2007 WL 3383601, at *1 (D. Ariz. Nov. 13, 2007) ("But because Plaintiffs filed a FLSA action against Defendant, the parties must seek approval of their stipulated settlement in order to ensure the enforceability of the Settlement Agreement."); Thornton v. Solutionone Cleaning Concepts, Inc., No. CIVF061455AWISMS, 2007 WL 210586, at *3 (E.D. Cal. Jan. 26, 2007) ("There are 'only two ways' in which FLSA wage claims by private sector employees can be settled or compromised: (1) through supervision by the secretary of Labor as provided by 29 U.S.C. § 216(c); and (2) approval by a district court of a settlement through a consent judgment after a lawsuit has been initiated.").

Defendants cite to Martinez v. Bohls Bearing Equip. Co., 361 F. Supp. 2d 608, 618-19 (W.D. Tex. 2005), which held that the language of the FLSA and its amendment history suggest that judicial approval is not required. But multiple other courts have called that decision into question. See, e.g., Yue Zhou, 2007 WL 172308, at *1 n.2; Sims v. Hous. Auth. of City of El Paso, No. EP-10-CV-109-KC, 2011 WL 3862194, at *6 n.2 (W.D. Tex. Sept. 1, 2011). Further, Defendants acknowledged at oral argument that the requirement of judicial approval was the majority rule, if not a universally acknowledged one.

In line with the dominant trend of the circuit, the Court agrees that FLSA settlements

9

require either judicial approval or approval from the Secretary of Labor.[1]  Returning to Defendants' letters to the putative class, it thus becomes clear that the communications omit critical information regarding the consequences of signing the settlement release.  Section 2(b) of the settlement agreement, entitled "Release of Claims raised in the Lawsuit," specifically provides that the claims released include those under the FLSA, PAGA, and the California Labor Code.  ECF No. 54, Exh. 4 at 2.  Neither the settlement agreement nor the two letters make any mention of the possibility of judicial approval ─ instead, the unmistakable perception is that accepting the Defendants' settlement offer will release *all* claims raised by Plaintiffs.

This is no minor omission.  The sole reason for Defendants' contact with the putative class was to solicit releases of their claims against Defendants, yet the letters neglected to inform the recipients that some of those claims could not, in fact, be released solely through the proffered agreement.  Moreover, the "purpose" of the FLSA is to "protect[] workers from substandard wages and oppressive working hours," and to combat the "great inequalities in bargaining power between employers and employees."  Lynn's Food Stores, Inc. v. United States, 679 F.2d 1350, 1352 (11th Cir. 1982).  That purpose is certainly frustrated by Defendants' failure to tell absent class members ─ who may until that moment have not even been aware of their rights under the FLSA ─ the necessary information they need to make an informed decision regarding the settlement of their claims.

Defendants cannot save themselves by suggesting, as they did at oral argument, that they can simply now apply for judicial approval.  The Court's concern here is the misleading nature of the releases at the time they were offered, not whether they can ultimately be enforced.  In any event, it is doubtful the settlement agreements are valid in light of the significant misinformation that accompanied them.

The Court therefore finds that it was misleading for Defendants to fail to note the possibility that some of the claims to be released in the settlement agreements would require the

---

[1] Given this conclusion, it is not necessary to also resolve whether settlements of PAGA and § 2802 claims require judicial approval.  It remains relevant, however, that Defendants' communications include no mention of the potential need for judicial approval of these claims.

1  Court's approval.

### D. Appropriate Remedies

In sum, Defendants' communications with the absent class members were misleading in two ways: first, by confusingly suggesting they could not contact Plaintiffs' counsel, and second, by omitting mention that FLSA claims, and potentially others, would require judicial approval to be released. Set against the backdrop of the employer-employee relationship between Defendants and the recipients, these deficiencies create "potential interference" with the rights of the putative class that require judicial intervention under Rule 23(d).[2]

Accordingly, the Court holds that any settlement releases signed by a putative class member and obtained by Defendants are invalid. A curative notice shall also be sent to all recipients of the Defendants' communications, notifying them that the settlement agreements are invalid. The parties shall submit competing proposed curative notices to the Court within seven days after the issuance of this order.

The Court does not find, however, that the additional remedy of enjoinment of future communications is necessary or appropriate here. Under Gulf Oil, any order regarding communications between parties and the putative class must be "carefully drawn" to "limit[] speech as little as possible." Gulf Oil Co. v. Bernard, 452 U.S. 89, 102 (1981). Here, Plaintiffs have not shown that Defendants' communications were so harmful that their rights to further contact with the putative class needs to be restricted. Nor have they shown a serious risk that Defendants will again mislead the absent class members in future communications. Though the

---

[2] The Court finds Plaintiffs' remaining three arguments to be unpersuasive. First, it was adequate for Defendants to attach the FAC rather than the SAC to their first letter to the putative class because at the time, the FAC was the operative complaint. Though Defendants could have included the SAC in their follow-up letter, Plaintiffs do not explain why declining to do so caused an omission or misinformation that the putative class would consider material.
  Second, it was not misleading for Defendants to place their own contact information more prominently than Plaintiffs'. Plaintiffs do not provide, and the Court was unable to find, any case law suggesting that the lack of equal billing for both sides' counsel can render communications misleading or coercive.
  Finally, the Court does not agree with Plaintiffs that the settlement agreement's language regarding the release of "future" claims was misleadingly overbroad. The most natural reading of Section 2(b) is that Defendants are released from both claims that are currently asserted as well as claims that are added or asserted at a later point in the case or in related litigation. See ECF No. 54, Exh. 4 at 2.

11

letters and settlement agreement contained serious deficiencies, the Defendants also appear to have made efforts to craft neutral and objective language when conveying information about the lawsuit to the putative class.  Accordingly, at this stage of the litigation the Court denies the request to enjoin Defendants from further communications withthe absent class members.

## CONCLUSION

Plaintiffs' application to invalidate any settlement releases obtained by Defendants and to send a curative notice is granted.  The parties shall submit competing proposals for a curative notice to the Court within seven days of the issuance of this order.  The notice should inform the recipients that the releases are invalid, and summarize the Court's reasoning, as described above, for invalidating them.  Plaintiffs' application to enjoin Defendants from communicating with the putative class is denied.

**IT IS SO ORDERED.**

Dated:  November 2, 2015

_____
JON S. TIGAR
United States District Judge